UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM PELLOW and GARY D. BOYN, Trustee of the Bankruptcy Estate or William Ernest Pellow, <br><br> Plaintiffs <br><br> vs. <br><br> McCORMICK & COMPANY, INC. <br><br> Defendant | CAUSE NO. 3:10-CV-76RM |

## OPINION AND ORDER

William Pellow, a driver who brought a trailer to McCormick & Company, Inc.'s South Bend, Indiana distribution facility, claims he suffered a knee injury when he slipped and fell on ice or snow in McCormick's loading dock area. Through the trustee of his bankruptcy estate, he sues McCormick for that injury. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and Indiana law provides the rule of decision. McCormick seeks summary judgment on the grounds that Mr. Pellow doesn't have expert medical testimony that shows his slip and fall caused the knee injury, and that Mr. Pellow incurred the risk of slipping and falling on the ice or snow. For the reasons that follow, the court denies the summary judgment motion.

> Summary judgment, of course, should be granted when the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law. If there is sufficient evidence for a jury to return a verdict for the non-moving party, a genuine issue of material fact exists. . . . It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders.

Berry v. Chicago Transit Auth., 618 F.3d 688, 690-691 (7th Cir. 2010) (citations omitted); *see also* FED R. CIV. P. 56.

To recover for negligence under Indiana law, a plaintiff must prove "(1) defendant's duty to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to that standard of care, and (3) an injury to the plaintiff proximately caused by the breach.'" Estate of Mintz v. Connecticut General Life Ins. Co., 905 N.E.2d 994, 998 (Ind. Ct. App. 2009) (*quoting* Estate of Heck v. Stoffer, 786 N.E.2d 265, 258 (Ind. 2003)). Mr. Pellow was an invitee: a person on McCormick's property for purposes of McCormick's business. Employees of independent contractors are invitees. Woods v. Qual-Craft Indus., Inc., 648 N.E.2d 1198, 1200 (Ind. Ct. App. 1995). "[A] landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises." Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991) (adopting definition of duty from RESTATEMENT (SECOND) OF TORTS § 343 (1965)).

The crux of this summary judgment proceeding rests on whether Mr. Pellow can, as a matter of law, demonstrate causation, which he must prove in a negligence case. McCormick says Mr. Pellow conceded that he can't demonstrate causation because he didn't address McCormick's argument that he must present expert testimony showing, to a reasonable degree of medical certainty, a causal link between his fall at work and his knee injury. McCormick further says that Mr. Pellow didn't file any expert

2

disclosures under Rule 26(a)(2), so he can't try to submit expert testimony on causation now.

As will be further explained, the court doesn't agree with McCormick's position on the need for expert reports to show causation in this case. It doesn't take an expert in this case for a layperson to understand the causal link between Mr. Pellow's fall at work and his knee injury. Though McCormick argues Mr. Pellow waived the "it doesn't take an expert" argument by not making the argument in his summary judgment response brief, the court needn't allow the case to be decided by a misapplication of the law. It's one thing for Mr. Pellow to waive an argument that could be made in the affirmative relief he seeks; it's something else entirely to ask the court to adopt an incorrect understanding of the law to allow McCormick to handcuff Mr. Pellow.

McCormick argues that Indiana law requires expert testimony in this case to show what caused Mr. Pellow's torn meniscus because a layperson can't understand causation in this case without the help of expert testimony. McCormick says Dr. Jacobs' battery of twelve tests on Mr. Pellow's knee came up negative on March 25, 2008 (the day after the slip-and-fall), and Mr. Pellow moved pontoon boats at a Michigan campground sometime in April 2008. Only after Mr. Pellow performed physical activity at the campground did Mr. Pellow see Dr. Jacobs again on May 1, and only then did Dr. Jacobs' McMurray Test come up positive for a potentially torn meniscus. McCormick implies that Mr. Pellow tore his meniscus at the campground in April and not at work in March. McCormick also argues that Mr. Pellow must come

forth with expert testimony to explain to the factfinder why the twelve negative tests performed the day after the slip-and-fall didn't disclose the torn meniscus.

Nothing in the summary judgement record suggests Mr. Pellow fell or otherwise hurt himself at the campground. Nothing in the record places Mr. Pellow at the Michigan campground with any certainty, and no evidence at all is available for what Mr. Pellow did at the campground if he was there. Of Mr. Pellow's alleged campground trip, Mr. Jackson said, "I don't know. Whatever." and Ms. Strozewski said "I don't even know if he went." Mr. Pellow's testimony doesn't mention any April campground trip.

Under Indiana negligence law, there must a "reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." Topp v. Leffers, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (*quoting* Daub v. Daub, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994)). This requires, at minimum, "causation in fact—that is, that the harm would not have occurred 'but for' the defendant's conduct." Daub v. Daub, 629 N.E.2d at 877. A plaintiff must present evidence of probative value based on facts or inferences drawn from the facts "establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of [his] injury." Id. The plaintiff's burden isn't carried with evidence based merely on speculation; Mr. Pellow's evidence must present a "reasonable certainty or probability" of causation." Id.

The defendant's conduct needn't be the only cause of the plaintiff's injuries, but rather must be "a" (not "the") cause. "The essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause." Smith v.

4

Beaty, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994); *see also* Estate of Mintz v. Connecticut General Life Ins. Co., 905 N.E.2d 994, 999 (Ind. Ct. App. 2009).

"When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." Topp v. Leffers, 838 N.E.2d 1027, 1033 (Ind. Ct. app. 2005) (*quoting* Daub v. Daub, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994)). But a "causal connection between a permanent condition, an injury, and a pre-existing affliction or condition is a complicated medical question." Topp v. Leffers, 838 N.E.2d at 1033 (*citing* Daub v. Daub, 629 N.E.2d at 877-878). Expert testimony is needed then because a layperson can't understand causation under those circumstances. Topp v. Leffers, 838 N.E.2d at 1033 (*citing* Daub v. Daub, 629 N.E.2d at 878).

In Daub v. Daub, Patricia Daub slipped on snow and ice that accumulated on her in-laws' patio, and said she hurt her back. At the time, she felt a little jerk but no pain. The next day, she spent several hours photocopying materials at her son's school and felt her lower back stiffening. Mrs. Daub associated the stiffness with bending over and standing up when photocopying. Mrs. Daub didn't seek immediate medical care, but later received chiropractic treatment and was hospitalized for ten days. She had two surgeries on her back, then slipped and fell at Cub Foods. Mrs. Daub had sustained a whiplash injury in a car accident at the age of sixteen. *See* Daub v. Daub, 629 N.E.2d at 876-877.

Mrs. Daub's injuries and her slip and fall on her in-laws' porch were connected in time, but not by much else. By itself, Mrs. Daub's testimony was "so lacking in

5

probative value on the question of cause in fact that it offer[ed] the jury at best only the mere possibility that her back ailment was in fact caused by the slip Mrs. Daub experienced at her in-laws." Id. at 878. Even Mrs. Daub couldn't distinguish objectively between her various back ailments, so an expert was needed to help resolve "the question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition" because it was a "complicated medical question." Id. at 877-878.

In Topp v. Leffers, Yvonne Topp was a front seat passenger in a vehicle that was rear-ended and she hit her head, causing intense pain. Ms. Topp refused to go to the hospital. Ms. Topp said she experienced pain in her neck, mid-back and lower back the next day. Ms. Topp had received chiropractic treatment for pain in her neck, mid-back and lower back earlier that year (the collision occurred in November). In those earlier treatments she told her doctor she had been in several car accidents. Topp v. Leffers, 838 N.E.2d at 1029.

Ms. Topp sued for aggravation of her pre-existing injuries. But her doctors could only say that the latest car accident "possibly" aggravated her pre-existing condition and couldn't specifically relate her latest complaints to the latest car accident. *See* id. at 1030. As in Daub v. Daub, the causal connection between the permanent condition, the injury, and the pre-existing condition was a complicated medical question. Topp v. Leffers, 838 N.E.2d at 1032.

Ms. Topp's complaints were merely subjective in nature, rather than objective, because she perceived an injury and reported it to her doctor, but the injury wasn't one

6

the doctor could see. Id. at 1033. Because her injuries were subjective in nature, her testimony couldn't prove causation without expert medical testimony. Id. (*citing* Daub v. Daub, 629 N.E.2d at 877). Ms. Topp had expert opinions from doctors, but the doctors' evidence was insufficient because they spoke of a mere "possibility" of aggravation of Ms. Topp's pre-existing condition, but lacked "reasonable medical certainty." Id. at 1033-1034.

Daub and Topp don't create a rule of law that expert medical opinions are always required in personal injury cases to show causation. If an injury is "objective" and a layperson can readily understand the causation, no expert opinion is needed to show causation. This occurred in Smith v. Beaty, 639 N.E.2d 1029 (Ind. Ct. App. 1994). Larry Smith was driving a UPS truck before dawn when his van blew a tire, he lost control, and the truck rolled over twice. A good Samaritan stopped to help Mr. Smith, who was trapped inside the truck. A semi-tractor trailer then collided with the flipped UPS van, spinning and twisting it before it came to rest again. Mr. Smith was then able to climb out of the van. Mr. Smith had five broken ribs and sued the semi-truck driver . Id. at 1031-1032.

The issue in Smith was whether Mr. Smith suffered his injuries when his tire blew out and his van flipped, or when the semi collided with his flipped van. Mr. Smith "did not present expert testimony to a reasonable degree of certainty that the semi's impact with his van was the proximate cause of his injuries." Id. at 1033. Beaty, the truck operating company, argued this was the end of Smith's case, but "Beaty misstate[d] Smith's burden of making a prima facie showing of causation to submit his

7

case to the jury" because causation "need not always be proven by expert testimony." Id. at 1034. "Causation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than a mere speculation" and "[w]hen the issue of causation is within the understanding of a lay person, testimony of an expert witness is not necessary." Id.

Mr. Smith testified that he felt severe pain only after the semi collided with his van. Before that impact, he was able to yell for help and slip his left arm through his seatbelt without rib pain. The good Samaritan corroborated this testimony, saying that Mr. Smith didn't complain about pain when she first arrived on the scene but that Mr. Smith appeared to be in great pain after the semi collided with his van. Id. at 1034-1035. This provided enough evidence to infer causation to show that the truck driver's conduct was "a" (not "the") cause of Mr. Smith's injuries. Id. at 1034.

McCormick hasn't convinced the court that it takes an expert to show that Mr. Pellow's knee injury resulted, at least in part, from his slip and fall at work. To begin with, Daub and Tropp were based on the difficulty of deciding, without the help of an expert, whether a pre-existing condition was aggravated by an incident or simply worsening, but Mr. Pellow doesn't claim any aggravation of a pre-existing condition so his case doesn't present the same concerns.

Nor do the negative tests on March 25 increase what Mr. Pellow must prove. Mr. Pellow testified at his deposition that he fell at work, experienced pain immediately, and could drive his manual transmission truck with only his right foot the rest of the day. He went to see Dr. Jacobs the next day, and Dr. Jacobs noted tenderness and an

8

"unspecified derangement of knee," providing objective indications of a knee injury. Dr. Jacobs reported that several tests that day were negative, but nothing in the summary judgment record supports McCormick's assumption that those test results ruled out or even discounted a meniscus injury.

There's a suggestion that Mr. Pellow helped clean up a campground in Michigan, but no evidence is available concerning what Mr. Pellow did or didn't do while at the campground. On May 1, Dr. Jacobs had a positive McMurray's test, and meniscus damage was found in a subsequent surgery. A layperson can draw the conclusion that the fall at work was "a" cause of Mr. Pellow's injury. Another question entirely might be the extent of damages resulting from Mr. Pellow's fall at work, but that question isn't before the court today.

McCormick isn't entitled to summary judgment on the causation issue. That leaves McCormick's argument that summary judgment should be granted based on incurred risk.

McCormick argues that Mr. Pellow knew he was stepping on ice when he went to crank his trailer. Because Mr. Pellow was familiar with the dangers of ice and snow, McCormick says he incurred the risk of injury and summary judgment must be entered for McCormick. Mr. Pellow responds that he never specifically knew there was ice where was stepping at work, but rather only testified to seeing "ice or snow" where he was working.

Incurred risk generally is a fact question for the trier of fact. City of Alexandria v. Allen, 552 N.E.2d 488, 497 (Ind. Ct. App. 1990). McCormick bears the burden of

9

proving incurred risk, IND. TR. R. 9.1(A), and must show "that the plaintiff knew and appreciated the danger caused by the defendant's negligence, but nevertheless accepted it voluntarily." Ferguson v. Modern Farm Systems, Inc., 555 N.E.2d 1379, 1381 (Ind. Ct. App. 1990). "The injured party must have been more than generally aware of the potential for mishap, but must have had actual knowledge of the specific risk." Id. Incurred risk "entails a subjective analysis into the plaintiff's actual knowledge and voluntary acceptance of the risk and involves a mental state of venturousness on the part of the actor." City of Alexandria v. Allen, 552 N.E.2d at 497.

Whether Mr. Pellow incurred the risk is a jury question. Mr. Pellow testified that he grew up in South Bend and so was very experienced with snow and ice and knew of its dangers. That general knowledge doesn't demonstrate as a matter of law that Mr. Pellow knew of the specific risk of the ice and snow that he stepped on when he went to crank his trailer. Whether Mr. Pellow even knew there was ice where he stepped is an open question. Whether Mr. Pellow was contributorily negligent or went so far as to incur the risk of his injury wholesale isn't something that can be resolved as a matter of law on this record.

For all of these reasons, the court DENIES McCormick's motion for summary judgment (DE 21).

ENTERED:  June 1, 2011

    /s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court